# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| PATRICIA ELAINE JUHL, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C15-3093-LTS <br><br> **MEMORANDUM OPINION AND ORDER** |

_____

Plaintiff Patricia Elaine Juhl seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Juhl contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision is affirmed.

## I.  BACKGROUND

Juhl was 55 years old, which is defined as an individual of advanced age, at the time of the alleged onset of disability. AR 26. She completed high school and received an associate degree for nursing in 1975. She has previously worked primarily as a nurse. AR 27. The Administrative Law Judge (ALJ) determined that she was incapable of performing this past work but was capable of performing other jobs that exist in significant number in the national economy. AR 18.

Juhl filed her applications on November 1, 2011, alleging a disability onset date of December 12, 2010. AR 196. She contends that she is disabled due to schizoaffective

disorder, along with hip and neck pain. AR 201. Juhl's claims were denied initially and on reconsideration. AR 59-60, 75-76. She then requested a hearing before an ALJ. ALJ John E. Sandbothe conducted a video hearing on August 15, 2013, and issued a decision denying Juhl's claim on August 29, 2013. AR 11-19.

Juhl sought review by the Appeals Council, which denied review on December 8, 2014, leaving the ALJ's decision as the final decision of the Commissioner. AR 1-4. On February 10, 2015, Juhl filed a complaint (Doc. No. 2) in this court seeking review of the Commissioner's decision. On March 9, 2015, with the consent of the parties (Doc. No. 11), the Honorable Mark W. Bennett transferred this case to me for final disposition and entry of judgment. The parties have now briefed the issues and the matter is fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity.

If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see also Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the

claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since December 12, 2010, the alleged onset date.

3. The claimant has the following severe impairment: schizoaffective disorder versus psychotic disorder, not otherwise specified, versus paranoid schizophrenia.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive work; superficial contact with the public; regular pace.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on May 4, 1955 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date.

8. The claimant has more than a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 12, 2010, through the date of this decision.

AR 13-19.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search

the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.  DISCUSSION

Juhl argues the ALJ's decision should be reversed for two reasons:

1. It is not supported by substantial evidence in the record.

2. The VE's opinion testimony is flawed.

Doc. No. 15. I will address these arguments separately.

## A. RFC Determination

### 1. *Applicable Standards*

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646.

While the RFC assessment must draw from the medical evidence for support, it is ultimately an administrative decision reserved to the Commissioner. *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007); 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c), 416.927(e)(2), 416.946(c). The ALJ is tasked with resolving questions of credibility and questions arising from conflicting medical evidence. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). At Step Four, the claimant has the burden to prove his or her RFC. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible functional limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Further, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must include only those impairments that are substantially supported by the record as a whole.

*Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

### 2.    *Analysis*

After careful consideration of the record, I find that substantial evidence supports the ALJ's finding that Juhl was capable of performing simple, routine and repetitive work at all exertional levels that involved only a regular pace and superficial contact with the public. AR 14. The ALJ supported his determination with extensive citations to the evidence of record. For example, the ALJ noted that Juhl had a diagnosis of schizoaffective disorder but needed only brief medication reviews and refills to control the disease. *Id*. Likewise, the ALJ summarized Juhl's mental status examinations and found that they were largely and consistently unremarkable. *Id*. He noted that Juhl displayed good attention and concentration, declined changes in medication, reported that she was doing well and had improvement in energy and motivation. *Id*. The ALJ also cited numerous daily activities that supported his decision, including Juhl's performance of household chores such as laundry, cooking, driving and preparing meals. AR 16.

Juhl argues, however, that the ALJ's RFC assessment should have included unspecified additional limitations. Doc. No. 15 at 9, 13. She contends that her ability to "perform simple tasks and interact with close friends and family members does not mean that [she] has the ability to work full-time in a competitive job market." *Id*. at 9 (citing *Harris v. Sec'y of Dept. of Health & Human Servs.*, 959 F.2d 723, 726 (8th Cir. 1992)). The claimant in *Harris* was more limited than Juhl, as she cooked only hot dogs or other simple foods that took little time to cook, did little driving and needed to prop her head up to comb her own hair. 959 F.2d at 726. Based on the record here, the ALJ was entitled to find that Juhl retained the ability to perform a greater scope of daily activities. Moreover, the ALJ accounted for Juhl's limitations by restricting her to simple, routine tasks and only superficial contact with others. AR 14.

Juhl also argues that the ALJ should have discussed various records, including her mental health progress notes. Doc. No. 15 at 10. However, the ALJ expressly referenced those notes when explaining that (a) her mental status examinations were largely and consistently unremarkable, (b) she had good attention and concentration, (c) she denied delusions, hallucinations or suicidal ideation and (d) she reported she was doing well and had improved energy and motivation. AR 14. The ALJ also discussed a specific instance where her health provider declined to support her application for benefits. AR 15, 301. Because it is clear that the ALJ considered all of the records at issue, that fact that the ALJ did not discuss them exhaustively is not error.

Next, Juhl argues that the ALJ should have given greater weight to a 1996 report from an occupational therapist who found that Juhl should not return to work as a nurse. Doc. No. 15 at 10 (citing AR 218). Not only was that report issued fourteen years before the alleged onset date, but it is actually consistent with the ALJ's finding that Juhl cannot return to her past relevant work as a nurse. AR 17. Juhl's reliance on that report is puzzling, at best.

Juhl also argues that the ALJ erred by failing to take into account the Global Assessment of Functioning (GAF) scores[1] assigned by her health care providers. Specifically, she points out that her GAF scores were lower whenever she tried to work or care for her grandchildren. However, the Commissioner has declined to endorse GAF scores in disability analysis and has determined that GAF scores have no "direct correlation" to disability adjudications. 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000); *accord Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010). Indeed, the latest version

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. 1994) (DSM–IV). For example, GAF scores between 41 and 50 indicate that the individual has serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job). *Id*.

of the *Diagnostic and Statistical Manual of Mental Disorders* has discontinued the use of GAF scores because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013) (DSM-V). For these reasons alone, it was not error for the ALJ to address Juhl's GAF scores.

In addition, Juhl has not attempted to link her GAF scores to actual occupational difficulties. The treatment notes accompanying her GAF scores were consistently unremarkable, as they showed that she had good concentration and attention and was doing well. AR 283, 285-87, 301, 303, 309-12, 314-15, 319. Ultimately, the various GAF scores assigned to Juhl provide little or no insight into her vocational abilities, which is the relevant inquiry here.[2]

Finally, Juhl argues that testimony from her mother and daughter supported unspecified limitations. Doc. No. 15 at 12. The ALJ provided valid reasons for discounting these statements. AR 16. The ALJ noted that the witnesses were neither medically-trained nor disinterested. *Id.* These are appropriate considerations. *See, e.g., Ash v. Astrue*, No. 2:10CV00043 AGF, 2011 WL 2936348, at *12 (E.D. Mo. July 19, 2011) (third-party witnesses not medically trained); *Ivy v. Colvin*, No. 13-5186, 2014 WL 4062889, at *5 (W.D. Ark. Aug. 18, 2014) (wife not a disinterested third-party witness). The ALJ also noted that the lay testimony was "not consistent with the preponderance of the opinions, observations by mental health professionals, mental status

---

[2] Juhl's reliance on *Pates-Fire v. Astrue*, 564 F.3d 935 (8th Cir. 2009), is misplaced. The ALJ in that case discredited a treating physician's opinion because a consultative examiner had assessed the claimant with a GAF score of 58. *Id.* at 944. The court surveyed the GAF scores of record and observed that the ALJ had not discussed or considered the many GAF scores below 50. *Id.* Indeed, the court noted that the claimant's GAF scores were above 50 only four out of twenty-one times over a six-year period. *Id.* Here, by contrast, Juhl's GAF scores were only below 50 in 2010. AR 285, 309-10. In 2011 and 2012, her GAF scores ranged from 55 to 66. AR 286-87, 301, 303, 311-15, 319. The Eighth Circuit has held that GAF scores from 52 to 60 are consistent with a finding of no disability. *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (quoting *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010)).

examinations, response to treatment or the claimant's work history in this case." AR 16. In addition, even if the ALJ could have been more thorough in discussing the third-party testimony, the same evidence that discredited Juhl's allegations of disabling symptoms also discredited the cumulative lay testimony. *See, e.g., Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Because substantial evidence in this record supports the ALJ's RFC determination, remand is not required on that issue.

## B.  *The Step Five Determination*

At Step Five of the sequential evaluation process, the ALJ found that jobs existed in significant numbers in the national economy that Juhl could have performed through the date of the ALJ's decision. AR 18. At this step, the ALJ determines if a claimant can adjust to other work based on his or her age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, the ALJ relied on the testimony of the VE in finding that Juhl was capable of a successful adjustment to other work. AR 18, 56-57.

"A VE's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) (citing *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005)). The hypothetical question must include "those impairments that the ALJ finds are substantially supported by the record as a whole." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). "[A]n ALJ may omit alleged impairments from a hypothetical question posed to a vocational expert when '[t]here is no medical evidence that those conditions impose any restrictions on [the claimant's] functional capabilities.'" *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (quoting *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994)). Thus, an ALJ's hypothetical question to the VE is proper

if it includes all the limitations that are included in a proper RFC assessment. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006).

Here, the ALJ asked the VE about a hypothetical individual of Juhl's age, education and work experience who had limitations consistent with Juhl's RFC. AR 14, 56. The VE testified that such a person could perform the jobs of laundry folder, cleaner housekeeping and photocopy machine operator. AR 56-57. The only error Juhl alleges is that the hypothetical question was deficient in failing to incorporate her GAF scores. I have already determined, however, that the ALJ properly formulated Juhl's RFC. Thus, the VE's testimony constitutes substantial evidence supporting the ALJ's finding that Juhl was capable of performing other work. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).

## VI. CONCLUSION

After a thorough review of the entire record, and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Juhl was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the final decision of the Commissioner is **affirmed**. Judgment shall enter against Juhl and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 3rd day of February, 2016.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE